OPINION
{¶ 1} Defendant-Appellant George Collins appeals from his convictions and sentences in the Richland County Court of Common Pleas on one count of murder with a gun specification and two counts of felonious assault each with a gun specification. Plaintiff-Appellee is the State of Ohio.
 {¶ 2} On the evening of December 14, 2002 and into the early morning hours of December 15, 2002, Mario Davis had a birthday party at the Parke Place Hotel in Mansfield, Ohio. The defendant who is from Columbus, Ohio attended the party with two friends from Detroit, Michigan. One of the friends was Antonio Maurice Allen aka "Snoop". The other friend was Lael Coleman.
 {¶ 3} The party was held in the basement of the building. Security patted down and searched everyone going into the party for weapons. At some point during the party, there was a short argument/disturbance which led to a fight between two females, Tina Hively and Karen Matthews. Security promptly removed Ms. Hively from the party. This disturbance appeared to upset one of the appellant's friends. Arguments started with not only security, but with other people attending the party. "Snoop" was causing a problem by spilling champagne on a dance floor. The problems between the so-called Detroit boys and the so-called Mansfield boys continued to escalate causing security to break up the party. The melee spilled out into the hallway outside the ballroom. A security guard sprayed pepper spray which caused everyone to leave from the room.
 {¶ 4} Karen Mathews testified that she saw Tina Hively outside in the parking lot on the ground crying. "Snoop" came outside and stated, "This is my bitch. You better not touch her. This is my money maker. Ain't nobody going to mess with her." Snoop continued saying, "Anyone fuck with her, got to fuck with me."
 {¶ 5} Darren Barber testified that appellant was blocking the exit door to the parking lot shooting into a crowd of people in the parking lot. Mr. Barber stated he was standing right behind the appellant when this occurred, but that the appellant did not notice him there because he was so intense on shooting into the crowd of people outside.
 {¶ 6} Frank Jenkins testified that he was head of the security detail at the party. He observed the appellant, "Snoop", Lael Coleman and Marcus Jones causing trouble at the party by taunting and cursing the Mansfield people at the party. The decedent, Robert Clark was not causing any problems at the party and was not arguing with the appellant or the appellant's friends. Mr. Jenkins patted down Mr. Clark that night and Mr. Clark did not have a weapon on him.
 {¶ 7} Robert Clark was shot three (3) times and died in the parking lot of the hotel. After the shooting was over, the appellant's friends, "Snoop" and Lael were celebrating around Robert Clark's body and asking the people in the crowd if anyone else wanted to "lay down like this nigger here," referring to Robert Clark. "Snoop" had on cream-colored shoes while he danced in Robert Clark's blood. Snoop's creamcolored shoes were introduced into evidence at trial.
 {¶ 8} The appellant fled to his aunt's house to dispose of the murder weapon. The appellant's aunt, Betty Cobb, testified that she lived near the scene of the murder. She testified that the appellant was her nephew as was a Mr. Raymond Osborn. Ms. Cobb testified that the appellant and Mr. Osborn knocked on her door immediately after the shooting at the Parke Place Hotel. She testified that the appellant was sweating profusely and was a ball of nerves. Raymond Osborn was furious with the appellant because the appellant had just "shot someone for no reason at all". Mr. Osborn told Ms. Cobb he was so upset he could "knock the shit" out of the appellant.
 {¶ 9} The appellant began to tell his aunt about what he had done. He told her the Mansfield "niggers" were upset with him and his friends at the party because he and his friends dressed better, had more money, and more women than the Mansfield "niggers". He said this upset "Snoop". "Snoop" went to their hotel room to get a gun. He and "Snoop" went outside with the gun. "Snoop" was pointing the gun at the Mansfield boys, but then "Snoop" froze and did not pull the trigger. Since "Snoop" froze, the appellant told his aunt he grabbed the gun away from "Snoop" and he just started "spraying them niggers, capping their asses". The appellant then went into the bathroom of Ms. Cobb's house and hid the murder weapon in the trash can. Ms. Cobb admitted she got scared and wiped the gun down and tried to hide it outside, but the police found it. Ms. Cobb testified the cause of the shooting, according to the appellant, was a verbal altercation with the Mansfield boys at the party, not a physical altercation.
 {¶ 10} William Taylor testified that appellant shot him at point blank range in the parking lot. Mr. Taylor was so close to the appellant that he could feel the fire from the gunshots. He did not realize that he had been shot at first, but when he realized that appellant had in fact shot him he went to the hospital and was treated for a gun shot wound to the shoulder. Jimmy Javell Likely testified that he was shot twice as he was attempting to leave the parking lot. He did not see who shot him. He was shot in the back and in the arm. Mr. Likely also went to the hospital for treatment.
 {¶ 11} Detective Pat Brooks of the Columbus Police Department testified that appellant had been a confidential informant with the Columbus Police Department in the past and that is how the officer knew him. The appellant was not working as a confidential informant when he came to Mansfield on December 14, 2002. The day after the shooting the defendant called Detective Brooks stating he was in trouble and needed to talk. He sounded distressed so Detective Brooks immediately returned the appellant's call. While on the telephone appellant told Detective Brooks that he was at a party in Mansfield when a fight broke out and that he shot someone. Appellant agreed to turn himself in because he had heard someone had been killed. Detective Brooks, together with two agents from the Drug Enforcement Agency ["DEA"], transported appellant to the Mansfield police department. While en route appellant explained to Detective Brooks that he picked up "Snoop's" gun and began shooting after a scuffle broke out.
 {¶ 12} Detective Steven Burst testified that appellant was informed of his constitutional rights and signed a written waiver of those rights. Appellant gave a taped statement in which he confessed to shooting into the crowd of people in the hotel parking lot. Detective Brian Cassidy of the Mansfield Police Department was also present during the appellant's confession.
 {¶ 13} Willie Evans testified that he was cell mate of the appellant in the Richland County Jail. The appellant admitted to Mr. Evans that he intentionally shot the first victim and then he shot the next two because they tried to help the first victim.
 {¶ 14} The defense called two witnesses. Defense witness Mark Barber testified that 15 to 30 shots were fired inside the hotel. Mr. Barber could not explain why the police found no spent cartridges or damage inside the hotel. He speculated that maybe DEA agents had cleaned up the hotel for the appellant before the police arrived on the scene.
 {¶ 15} The second defense witness called was Jeremy Beidelschies. He testified that shooter chased Robert Clark around a red Oldsmobile and then shot him dead. On cross-examination, when the prosecutor had Mr. Beidelschies look at some photos, Mr. Beidelschies picked out the appellant as the person who shot and killed Robert Clark.
 {¶ 16} The appellant was found guilty after a jury trial of the murder of Robert Clark and the accompanying gun specification. Appellant was also found guilty of two counts of felonious assault with gun specifications for shooting and wounding Jimmy Jevel Likely and William Taylor. The appellant was sentenced to 15 years to life plus 3 years consecutive on the gun specification for murder of Robert Clark. Appellant was further sentenced to 5 years of prison for the felonious assault on Jimmy Jevel Likely and 3 years prison for the felonious assault to William Taylor. The felonious assault sentences run consecutively to each other and consecutive to the murder and gun specification sentence. Appellant further pled guilty to one count of having weapons while under disability. The court sentenced appellant to the minimum sentence of six months in prison concurrently to the other counts. Appellant's aggregate sentence is a total of 26 years to life in prison.
 {¶ 17} Appellant timely appealed and submits the following seven assignments of error for our consideration:
 {¶ 18} "I. The verdict of guilty to murder was contrary to the weight of the evidence.
 {¶ 19} "II. Defendant's sixth amendment rights were denied due to ineffective assistance of his trial counsel.
 {¶ 20} "III. The court erred when it ordered defendant to serve consecutive sentences.
 {¶ 21} "IV. The trial court erred when it instructed the jury that defendant/appellant had to prove the lesser included offense.
 {¶ 22} "V.O.R.C. 2903.02 (b) is unconstitutional when the underlying felony is felonious assault.
 {¶ 23} "VI. The trial court committed plain error when it failed to instruct the jury on involuntary manslaughter.
 {¶ 24} "VII. The court committed plain error when it admitted the pair of blood stained shoes."
 {¶ 25} "VIII. The trial court erred when it failed to suppress the defendant's statements to the mansfield police department.
 {¶ 26} "IX. The trial court erred when it failed to suppress the defendant's statements to the columbus police department.
 {¶ 27} "X. The trial court committed plain error in the instructions to the jury and the jury verdict forms."
 I. {¶ 28} In his First Assignment of Error, appellant maintains that his conviction for Murder is against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 29} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 30} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice. State v. Thompkins (1997), 78 Ohio St. 3d 387, citations omitted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St. 3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 31} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St. 2d 230, syllabus 1.
 {¶ 32} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller
(2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498.
 {¶ 33} In Count One, appellant was charged with murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *." In Count 2, he was charged with murder in violation of R.C. 2903.02(B), which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."
 {¶ 34} To find the appellant guilty of Murder as charged in the indictment in the case at bar, the jury would have to find either that the appellant purposely caused the death of another or appellant caused the death of another as a proximate result of the appellant's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03
[voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code.
 {¶ 35} R.C. 2901.22 Culpable mental states, provides:
 {¶ 36} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 37} "Intent need not be proven by direct testimony. State v. Lott
(1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, intent to kill `may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound.'State v. Robinson (1954), 161 Ohio St. 213, 53 O.O. 96, 118 N.E.2d 517, at paragraph five of the syllabus; State v. Eley (1996), 77 Ohio St.3d 174,180, 672 N.E.2d 640, 648". State v. Stallings (2000), 89 Ohio St.3d 280,290, 2000-Ohio-159, 731 N.E.2d 159,171.
 {¶ 38} The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. State v. Mackey (1999), Cuyahoga App. No. 75300, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1496,727 N.E.2d 920, citing State v. Widner (1982), 69 Ohio St.2d 267,431 N.E.2d 1025 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); State v. Dunlap (1995), 73 Ohio St.3d 308,316, 652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096,116 S.Ct. 1096, 133 L.Ed.2d 765. State v. Banks, 10th Dist. No. 01 AP-1179, 2002-Ohio-3341 at ¶ 24.
 {¶ 39} "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496, 691 N.E.2d 1058
(finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), quoting State v. Brown (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed, 77 Ohio St.3d 1468,673 N.E.2d 135; see, also, State v. Smith (1993), 89 Ohio App.3d 497,501, 624 N.E.2d 1114 (finding that pointing a gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). Banks, supra, at ¶ 26.
 {¶ 40} Appellant admitted that he fired a nine millimeter handgun numerous times into a crowded parking lot. These acts are strong indication that appellant at least intended to shoot someone. Given the close range and caliber of the firearm, a trier of fact could construe the intention to shoot as proof of an intention to kill. See, e.g.Smith, supra.
 {¶ 41} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of murder and felonious assault.
 {¶ 1} We hold, therefore, that the state met its burden of production regarding each element of the crime of murder and felonious assault and, accordingly, there was sufficient evidence to support appellant's convictions.
 {¶ 42} Although appellant presented testimony from additional witnesses that shots were fired inside the hotel and that he did not intend to shoot anyone, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness's credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 43} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the crimes of murder and felonious assault.
 {¶ 44} Accordingly, appellant's convictions for murder and felonious assault are not against the manifest weight or the sufficiency of the evidence.
 {¶ 45} Appellant's First Assignment of Error is overruled.
 II. VII. {¶ 46} In his Second Assignment of Error, appellant argues that he was denied effective assistance of trial counsel. In his Seventh Assignment of Error appellant alleges that the trial court committed plain error by allowing into evidence a pair of blood soaked shoes. Because these errors are intertwined we will address them together.
 {¶ 47} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L.Ed.2d 180; Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 48} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 49} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
 {¶ 50} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quotingStrickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 51} Appellant argues that his trial counsel failed to object to the array of jurors, failed to move for a change of venue, failed to object to irrelevant evidence and failed to object to the admission into evidence by the trial court of a pair of blood stained shoes.
 {¶ 52} At the outset we note that the record does not establish that appellant was tried by an all white jury.
 {¶ 53} The United States Constitution, through the Sixth andFourteenth Amendments, guarantees a criminal defendant the right to a fair and impartial jury chosen from a fair cross-section of the community. Duren v. Missouri (1979), 439 U.S. 357, 99 S.Ct. 664,58 L.Ed.2d 579; State v. Puente (1982), 69 Ohio St.2d 136, 23 O.O.3d 178,431 N.E.2d 987, certiorari denied (1982), 457 U.S. 1109, 102 S.Ct. 2910,73 L.Ed.2d 1318. In State v. Strodes (1976), 48 Ohio St.2d 113, 115, 2 O.O.3d 271, 272, 357 N.E.2d 375, 377, vacated on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154, our Supreme Court held:
 {¶ 54} "Unless prejudice to the defendant or the systematic and intentional exclusion of a group is shown, we will not reverse a judgment because of minor and technical defects in jury selection procedures."
 {¶ 55} Appellant has not claimed that the state failed to follow Ohio's statutory procedure for selecting jurors under R.C. Chapter 2313, or that said procedure itself intentionally or systematically excludes any cognizable group. Instead, appellant argues only that counsel was ineffective for not arguing that his venire did not represent a fair cross-section of the community because it did not include blacks or other minorities.
 {¶ 56} In order for appellant to demonstrate that the fair cross-section requirement had been violated, appellant must show:
 {¶ 57} "`(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under representation is due to systematic exclusion of the group in the jury-selection process.' Duren v. Missouri, supra [439 U.S.] at page 364 [99 S.Ct. at page 668, 58 L.Ed.2d at page 587]." State v. Puente,
supra, 69 Ohio St.2d at 138, 23 O.O.3d at 179, 431 N.E.2d at 989.
 {¶ 58} The record is silent with regard to the composition of the venire. Moreover appellant's systematic-exclusion claim is based solely on alleged under representation on his venire. But under representation on a single venire is not systematic exclusion. See Ford v. Seabold
(C.A.6, 1988), 841 F.2d 677, 685. Cf. Duren, 439 U.S. at 366,99 S.Ct. at 669, 58 L.Ed.2d at 588 (discrepancy "not just occasionally, but in every weekly venire for a period of nearly a year" showed systematic exclusion). State v. McNeill (1998), 83 Ohio St.3d 438, 445,1998-Ohio-293, 700 N.E.2d 596, 604. Appellant's failure to point to any evidence supporting a prima facie violation of the fair crosssection requirement defeats this claim. See, e.g., United States v. Allen,160 F.3d 1096, 1103-04 (6th Cir. 1998) (finding no Sixth Amendment fair cross-section violation where defendants failed to meet second and third prongs of prima facie case).
 {¶ 59} Accordingly, we find no prejudice to appellant as a result of trial counsel's failure to challenge the jury array.
 {¶ 60} Appellant next argues that his trial counsel was ineffective in failing to move for a change of venue.
 {¶ 61} A motion for change of venue is governed by Crim.R. 18(B), which provides, "Upon the motion of any party or upon its own motion the court may transfer an action * * * when it appears that a fair and impartial trial cannot be held in the court in which the action is pending." However, Crim.R. 18(B) does not require a change of venue merely because of extensive pretrial publicity. Any decision on a change of venue rests in the trial court's discretion. State v. Lynch,98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 34; State v.Landrum (1990), 53 Ohio St.3d 107, 116-117, 559 N.E.2d 710.
 {¶ 62} "A defendant claiming that pretrial publicity has denied him a fair trial must show that one or more jurors were actually biased. +Statev. Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749. Only in rare cases may prejudice be presumed. State v. Lundgren (1995),73 Ohio St.3d 474, 479, 653 N.E.2d 304; see, also, Nebraska Press Assn.v. Stuart (1976), 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683." Statev. Yarbrough (2004), 104 Ohio St.3d 1, 11, 2004-Ohio-6087 at ¶ 60-61, 817 N.E.2d 845,856.
 {¶ 63} Appellant has failed to show that the publicity in this case was so pervasive that it impaired the ability of the impaneled jurors to deliberate fairly and impartially.
 {¶ 64} Although several impaneled jurors had read or seen articles about the case, each had been exposed to comparatively little pretrial publicity. Cf. State v. Lundgren (1995), 73 Ohio St.3d 474, 479-480,653 N.E.2d 304, 313-314. Moreover, each impaneled juror confirmed that he or she had not formed an opinion about the guilt or innocence of the accused, or could put aside any opinion, and that he or she could render a fair and impartial verdict based on the law and evidence. State v.Treesh (2001), 90 Ohio St.3d 460, 464, 739 N.E.2d 749, 759.
 {¶ 65} Accordingly, we find no prejudice to appellant as a result of trial counsel's failure to move for a change of venue.
 {¶ 66} Appellant next contends that counsel was ineffective because he failed to object to irrelevant evidence.
 {¶ 67} Initially, we note that appellant has failed to properly brief this issue on appeal. App.R. 16(A)(7) states that an appellant shall include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contention, with citations to theauthorities, statutes and parts of the record on which appellant relies." [Emphasis added.] In this case, appellant has wholly failed to cite any specific place in the trial court's record where any of the errors are alleged to have occurred.
 {¶ 68} An appellate court is empowered to disregard an assignment of error presented for review due to lack of briefing by the party presenting that assignment. State v. Watson (1998), 126 Ohio App.3d, 316,710 N.E.2d 340, discretionary appeal disallowed in (1998),82 Ohio St.3d 1413, 694 N.E.2d 75, Hawley v. Ritley (1988),35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." Uncapher v. Baltimore Ohio Rd. Co. (1933),127 Ohio St. 351, 356, 188 N.E. 553, 555.
 {¶ 69} Appellant next contends that trial counsel was ineffective because he did not object to evidence concerning the actions of appellant's associates. We disagree.
 {¶ 70} In State v. Wilkinson (1980), 45 Ohio St.2d 308, the Ohio Supreme Court cited with approval the rule set forth in United States v.Roberts (C.A.6, 1977), 548 F.2d 665, 667:"[t]he jury is entitled to know the `setting' of a case. It cannot be expected to make its decision in a void — without knowledge of the time, place and circumstances of the acts which form the basis of the charge." Id. at 317.
 {¶ 71} In State v. White (1st Dist., June 25, 1997), Hamilton County Court of Appeals, Case No. C-960506 in permitting the State to introduce extrinsic evidence of the defendant's drug dealings in a felonious assault case the court noted: ". . . the prosecution's comments and the testimony of the witnesses tended to provide the circumstances and the setting surrounding the assault on Brooks. Specifically, this testimony provided the jury with an opportunity to see the nature of the relationship among the individuals involved in the assault on Brooks and their relationship with the witnesses to the beating, several of who testified as to their own drug usage. The evidence presented a complete picture of what occurred." Id. at *2.
 {¶ 72} In State v. Mack (5th Dist. Nov. 19, 1998), Richland County Court of Appeals, Case No. 98-CA6-2, this court held: "[w]e find the State misunderstands the nature of the evidence. Appellant did not seek to present this evidence as proof of severe provocation, but rather as evidence tending to show the reasonableness of his suspicion that Jenkins was the burglar. The past history of the parties will not be evidence of the actual incident alleged to be the provocation, but may be admissible to show the reasonableness of the defendant's reaction to the "final straw that broke the camel's back" incident. In other words, the defendant must show a recent serious incident of sufficient provocation to incite to deadly force. But he can also present evidence of other incidents, of themselves too far remote from the crime, to show why his reaction to the most recent provocation was reasonable."
 {¶ 73} Accordingly, we find no prejudice to appellant as a result of trial counsel's failure to object to evidence concerning the actions of appellant's associates.
 {¶ 74} Appellant next argues that trial counsel was ineffective by not objecting to the admission into evidence of a pair of blood soaked shoes, and further that the trial court committed plain error by allowing the shoes to be admitted into evidence at trial. We disagree.
 {¶ 75} At no time was the jury told that the pair of bloody sneakers belonged to appellant. In fact the jury was specifically informed that the shoes belonged to "Snoop." Part of the defense strategy in the trial of appellant's case was to paint "Snoop" as the more culpable party.
 {¶ 76} Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carver (1995), 72 Ohio St. 3d 545, 558; State v.Mosses, Richland App. 2001CA104, 2003-Ohio 5830. In any event, we find the trial court did not err by admitting the shoes into evidence at trial.
 {¶ 77} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 78} Appellant did not object at trial to the admission of the shoes. Accordingly, we must review this error under the plain error standard.
 {¶ 79} Crim.R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim.R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 80} In U.S. v. Dominguez Benitez (June 14, 2004), 124 S.Ct. 2333,159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding. See Arizona v. Fulminante, 499 U.S. 279, 309 — 310 (1991) (giving examples).
 {¶ 81} "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as `error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See Kotteakosv. United States, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. § 2111, an error must have "substantial and injurious effect or influence in determining the . . . verdict." Kotteakos, supra, at 776." Id. at 2339. See, also, State v. Barnes (2002), 94 Ohio St.3d 21,759 N.E.2d 1240.
 {¶ 82} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770; State v. Perry (2004), 101 Ohio St.3d 118,120, 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to `prevent a manifest miscarriage of justice.' State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 83} Under Evid.R. 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that supports the State's explanation of the events is clearly relevant. State v. Nusser (Aug. 18, 2003), 5th
Dist. No. 2002AP 06 0044 at ¶ 26.
 {¶ 84} The shoes at issue were relevant to support the credibility of the State's witnesses to the shooting. Those witnesses testified that appellant's friend Antonio Maurice Allen aka "Snoop" danced in the decedent's blood while, celebrating and taunting the crowd. The shoes belonged to the person who was alleged to be with appellant at the time of the shooting. The actions of "Snoop" could be used to buttress an argument that the shooting was not unintended.
 {¶ 85} In sum, appellant has not met his burden of showing prejudice under Rule 52(b).
 {¶ 86} Because any error in this case did not "affec[t] substantial rights", appellant's Second and Seventh Assignments of Error are overruled.
 III. {¶ 87} In his Third Assignment of Error, appellant argues that the trial court erred in imposing consecutive sentences. Appellant further argues that imposition of consecutive sentences was error because there was no separate animus. We disagree.
 {¶ 88} After the enactment of Senate Bill 2 in 1996, an appellate court's review of an appeal from a felony sentence was modified. Pursuant to present R.C. 2953.08(G) (2): "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for re-sentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion.
 {¶ 89} The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 90} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E) (4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 91} "(b) That the sentence is otherwise contrary to law."
 {¶ 92} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 93} When reviewing a sentence imposed by the trial court, the applicable record to be examined by the appellate court includes the following: (1) the presentence investigation report; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statements made to or by the court at the sentencing hearing at which the sentence was imposed. R.C. 2953.08(F) (1) through (3). The sentence imposed, by the trial court, should be consistent with the overriding purposes of felony sentencing: "to protect the public from future crime by the offender" and "to punish the offender."
 {¶ 94} In order to impose consecutive sentences, a trial court must comply with R.C. 2929.14 (E) (4) and R.C. 2929.19 (B) (2) (c). R.C. 2929.14
(E) (4) states as follows: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 95} "(a) The offender committed one or more multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to Sections 2929.16, 2929.17, 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 96} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 97} "(c) The offender's history of criminal conduct demonstrates the consecutive sentences are necessary to protect the public from future crimes by the offender."
 {¶ 98} Revised Code 2929.19 (B) (2) (c) requires that a trial court state its reasons for imposing consecutive sentences.
 {¶ 99} In State v. Comer, 99 Ohio St. 3d 463, 2003-Ohio-4165, the Supreme Court held a trial court is required to make its statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing.
 {¶ 100} The import of the decision in Comer, supra, is that the trial court must explain its decision to impose consecutive sentences to a defendant and base its decision on the statutorily enumerated criteria.
 {¶ 101} At sentencing the trial court in the case at bar found recidivism is likely based upon appellant's past criminal record and his lack of remorse or an acceptance of his responsibility for the commission of the crimes for which the jury found appellant guilty. (7T. at 14). The court found that there is no more serious crime than murder. (Id. at 15). The court noted that appellant's conviction for the gun specification was required by law to be served consecutively to the other sentences. (Id.). The court specifically found that the harm caused by the actions of the appellant was so great and unusual that a single prison term does not adequately reflect the seriousness of appellant's conduct and does not adequately protect the public from future crimes. (Id. at 16). Taken as a whole we find the trial court complied with the statutory requirements for imposing consecutive sentences.
 {¶ 102} Appellant further argues that the trial court erred by not merging the sentences.
 {¶ 103} At the outset we would note that appellant failed to object at trial or sentencing to the trial court's failure to merge the offenses. "A defendant's failure to object to convictions or sentencing at trial results in a waiver of an allied offense claim on appeal absent plain error". State v. Denham, Greene App. No. 2001 CA 105, 2002-Ohio-3912, at ¶ 10, following State v. Comen (1990), 50 Ohio St.3d 206, 211,553 N.E.2d 640.
 {¶ 104} In State v. Maddern (May 12, 2000), 5th Dist. No. 99CA00273 this court stated: "[t]he Ohio Supreme Court considered this issue inState v. Jones (1985), 18 Ohio St. 3d 116, 480 N.E. 2d 408. In Jones, two passengers in the defendant's automobile were killed as a result of defendant's reckless operation of his vehicle. The Supreme Court found the defendant's conduct constituted two offenses of dissimilar import. The "import" being each person killed. Therefore, Supreme Court concluded, the defendant was lawfully convicted and sentenced on both counts."
 {¶ 105} Relying on Jones, the Third Appellate District found that each of three felonious assault convictions were of dissimilar import where the defendant fired into a car holding three people even where the defendant only had one actual target. State v. Phadphom (Sept. 19, 1996), Crawford App. No. 3-96-11, unreported. The Tenth District held that a defendant could be convicted of two felonious assaults where he fired into a residence to shoot one person but injured two people because dissimilar import exists for each person affected by the conduct. Statev. Miller (June 15, 1995), Franklin App. No. 94APA10-1458, citing Jones
and the Eighth District's case of State v. Phillips (1991),75 Ohio App.3d 785 (which held that because the legislature defines crimes such as felonious assault in terms of harm done to "another," there is a dissimilar import with respect to each person subjected to the harm or risk of harm). Similarly, the Eleventh District found that a defendant could be convicted of aggravated murder and two counts of attempted aggravated murder where he shot into a group in order to hit a person who did not get shot. State v. Harvey (May 2, 1997), Lake App. No. 95-L-192, unreported.
 {¶ 106} Under this analysis, where a defendant commits a single act and is charged with two offenses each which concern a different victim, the offenses are not allied offenses of similar import but are offenses of dissimilar import.
 {¶ 107} As such, appellant was properly convicted and sentenced for both the murder of Robert Clark and the felonious assaults of Mr. Likely and Mr. Taylor.
 {¶ 108} Accordingly, appellant's Third Assignment of Error is overruled.
 IV. {¶ 109} In his Fourth Assignment of Error appellant maintains that the trial court committed plain error by instructing the jury that appellant had the burden of proof on the lesser-included offenses of Voluntary Manslaughter and Aggravated Assault. We disagree.
 {¶ 110} As no objection was raised at the trial court level, we must review this assignment of error under the plain error analysis as set forth in Assignment of Error II, supra.
 {¶ 111} We are bound by the decision of the Supreme Court of Ohio inState v. Rhodes (1992), 63 Ohio St.3d 613, 590 N.E.2d 261, syllabus, which states as follows:
 {¶ 112} "A defendant on trial for murder or aggravated murder bears the burden of persuading the fact finder, by a preponderance of the evidence, that he or she acted under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, R.C. 2903.03(A), in order for the defendant to be convicted of voluntary manslaughter rather than murder or aggravated murder. (State v. Muscatello [1978],55 Ohio St.2d 201, 9 O.O.3d 148, 378 N.E.2d 738, construed and modified.)" The same can be said with respect to Aggravated Assault as R.C. 2903.11 contains the identical language concerning provocation.
 {¶ 113} The appellant's due process and equal protection arguments were rejected by the court in Rhodes, supra.
 {¶ 114} Accordingly, we find the appellant has failed to sustain his burden of demonstrating that a plain error affected his substantial rights. United States v. Olano (1993), 507 U.S. at 725,734, 113 S.Ct. 1770;State v. Perry (2004), 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646. We find no manifest miscarriage of justice occurred in this case. State v.Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting State v.Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Perry, supra, at 118, 802 N.E.2d at 646.
 {¶ 115} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 116} In his Fifth Assignment of Error, appellant argues that R.C.2903.02(B) is unconstitutional when the underlying crime is felonious assault. We disagree.
 {¶ 117} We find appellant failed to challenge the constitutionality of the statutory scheme at the trial court level. As stated by the Supreme Court of Ohio in State v. Awan (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus:
 {¶ 118} "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." See, State v. Cross (Sept. 30, 1999), 5th Dist. No. 1998CA00238.
 {¶ 119} "The general rule is that `an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.' State v. Childs (1968), 14 Ohio St.2d 56 [ 43 O.O.2d 119], 236 N.E.2d 545, paragraph three of the syllabus; Statev. Glaros (1960), 170 Ohio St. 471 [11 O.O.2d 215], 166 N.E.2d 379, paragraph one of the syllabus; State v. Lancaster (1971), 25 Ohio St.2d 83
[54 O.O.2d 222], 267 N.E.2d 291, paragraph one of the syllabus; Statev. Williams (1977), 51 Ohio St.2d 112, 117 [5 O.O.3d 98], 364 N.E.2d 1364. Likewise, `[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time.' State v. Childs, supra,14 Ohio St.2d at 62 [43 O.O.2d 119], 236 N.E.2d 545, citing State v.Davis (1964), 1 Ohio St.2d 28 [30 O.O.2d 16], 203 N.E.2d 357; State, exrel. Specht, v. Bd. of Edn. (1981), 66 Ohio St.2d 178, 182 [ 20 O.O.3d 191], 420 N.E.2d 1004, citing Clarington v. Althar (1930),122 Ohio St. 608, 174 N.E. 251, and Toledo v. Gfell (1958),107 Ohio App. 93, 95 [7 O.O.2d 437], 156 N.E.2d 752. [Footnote omitted.] Accordingly, the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. See State v. Woodards (1966),6 Ohio St.2d 14 [35 O.O.2d 8], 215 N.E.2d 568. This rule applies both to appellant's claim that the statute is unconstitutionally vague on its face and to his claim that the trial court interpreted the statute in such a way as to render the statute unconstitutionally vague. Both claims were apparent but yet not made at the trial court level." State v. 1981 DodgeRam Van (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524.
 {¶ 120} As was noted in State v. Jones, 8th Dist. No. 80737, 2002-Ohio-6045, "R.C. 2903.02(B) . . . has been challenged numerous times by defendants convicted under this statute. The courts, including our court, have consistently determined that the statute passes constitutional muster. See, e.g., State v. Miller, Cuyahoga App. No. 79949, 2002-Ohio-2257; State v. Dixon, Montgomery App. No. 18582, 2002-Ohio-541; State v. Bowles (May 11, 2001), Lake App. No. 99-L-075;State v. Luttrell (Nov. 2, 2001), Montgomery App. No. 18496, 2001-Ohio-1702; State v. Smathers (Dec. 20, 2000), Summit App. No. 19945; State v. Hayden (July 14, 2000), Lake App. No. 99-L-037.
 {¶ 121} "Specifically, Jones argues, first, that the statute relieved the state of proving a culpable mental state, in violation of due process. We disagree. As the court in Hayden, supra, states:
 {¶ 122} `Under the common law approach, R.C. 2903.02(B) does not relieve the state of the burden of proving mens rea simply because the intent to kill is conclusively presumed so long as the state proves the required intent to commit the underlying felony. At common law, `malice aforethought' was ascribed to a felon who killed another in the perpetration of an inherently dangerous felony such as rape, robbery, or burglary. Specifically, under the common law rule, the United States Supreme Court recognized that `prosecutors do not need to prove a culpable mental state with respect to the murder because intent to kill is conclusively presumed if the state proves intent to commit the underlying felony.' Hopkins v. Reeves (1998), 524 U.S. 88, 91-92,118 S.Ct. 1895, 141 L.Ed.2d 76." Id. at ¶ 128-30.
 {¶ 123} Appellant further argues that R.C. 2903.02(B) violates his federal and state constitutional guarantees of equal protection of the laws. In rejecting an argument identical to the one raised by Appellant, the First District Court of Appeals noted the limitations on the offenses that can serve as predicate felonies under R.C. 2903.02(B) and stated:
 {¶ 124} "The General Assembly has thus narrowly defined the scope of felony murder under R.C. 2903.02(B), and related it to the legitimate purpose of punishing the taking of human life while committing a separate offense of violence. Only eleven firstand second-degree offenses may serve as predicate offenses under this statute. Voluntary and involuntary manslaughter may not." State v. Pickett, 1st Dist. No. C-000424, 2001-Ohio-4022, at 6, appeal not allowed (2002), 94 Ohio St.3d 1508,764 N.E.2d 1037.
 {¶ 125} The Eleventh District Court of Appeals also found R.C.2903.02(B) constitutional in spite of the statute's failure to incorporate the merger doctrine, concluding that "`it is a legislative prerogative to provide what form or forms of the felony-murder rule it wishes to implement as long as the statutes enacted are otherwise within constitutional parameters.' State v. Hayden (July 14, 2000), 11th Dist. No. 99-L-037, 2000 Ohio App. LEXIS 3198, at *13-14, appeal not allowed (2001), 91 Ohio St.3d 1522." State v. Cherry, 9th Dist. No. 20771, 2002-Ohio-738 at ¶ 28-30.
 {¶ 126} Accordingly, appellant's Fifth Assignment of Error is overruled.
 VI. {¶ 127} In his Sixth Assignment of Error appellant argues that the trial court committed plain error in failing to instruct the jury on the charge of Involuntary Manslaughter. We disagree.
 {¶ 128} As the instruction was not requested at the trial level, we must review this assignment of error in light of the plain error analysis as set forth in Assignment of Error II, supra.
 {¶ 129} "Even though involuntary manslaughter is a lesser included offense of murder, a criminal defendant is only entitled to such an instruction when the evidence warrants it." State v. Brown, 9th Dist. No. 20662, 2002-Ohio-148, at 9, citing State v. Kidder (1987),32 Ohio St.3d 279, 280, 513 N.E.2d 311. See, also, State v. Thomas
(1988), 40 Ohio St.3d 213, 215, 533 N.E.2d 286 (stating that involuntary manslaughter is a lesser included offense of murder).
 {¶ 130} A defendant is entitled to a jury instruction on a lesser included offense when the evidence presented at trial reasonably supports both an acquittal of the crime charged and a conviction of the lesser included offense. State v. Shane (1992), 63 Ohio St.3d 630, 632,590 N.E.2d 272, Thomas, 40 Ohio St.3d at 216, 533 N.E.2d 286. Sufficient evidence is needed, and it is to be viewed in a light most favorable to the defendant. Shane, 63 Ohio St.3d at 632-33, 590 N.E.2d 272; Smith,89 Ohio St.3d at 331, 731 N.E.2d 645, citing Wilkins, 64 Ohio St.2d at 388,415 N.E.2d 303.
 {¶ 131} Pursuant to R.C. 2903.04(A), a person commits involuntary manslaughter when he causes the death of another as a proximate result of committing or attempting to commit a felony. Appellant argues that the jury could have found that he was provoked and fired the gun while under influence of sudden passion or in a sudden fit of rage brought on by serious provocation by the victim. Appellant appears to be arguing that the jury could have found him not guilty of the predicate offense of felonious assault under R.C. 2903.02(B) but guilty of the lesser offense of aggravated assault with respect to the killing of Mr. Clark.
 {¶ 132} However, any provocation by the victim must be sufficient to arouse the passions of an ordinary person beyond his or her control.Shane, 63 Ohio St.3d at 634-35, 590 N.E.2d 272. The provocation must be reasonably sufficient to incite the defendant to use deadly force. Id. at 635, 590 N.E.2d 272. Mere words do not constitute sufficient provocation in most situations. Id. at 637, 590 N.E.2d 272.
 {¶ 133} Appellant's account of what led up the shootings varied. However, evidence was presented that appellant and his companion left the party after a scuffle broke out and returned to their hotel room. (4T. at 757). Unable to open the door, the pair proceeded to break it down. (Id. at 758). Instead of remaining out of the way of any harm by remaining inside the hotel room, the pair retrieves a nine millimeter handgun and return to the affray. (Id.). Nothing in the record suggests that appellant had been threatened or attacked before returning to the hotel room with his companion to retrieve the gun. The record contains no evidence that the decedent or the two individuals who were shot were in any way involved in a confrontation with the appellant. Accordingly, there is no evidence of provocation by any of the victims.
 {¶ 134} The sole evidence relied upon by appellant as justifying provocation was the alleged attack on Tina Hively in the parking lot. Appellant cites no evidence in the record that he witnessed any attack upon Ms. Hively other than the confrontation between Karen Matthews and Ms. Hively inside the hotel which led to Ms. Hively being ejected from the party. Sufficient time intervened between that occurrence and the shooting to have cooled any sudden passion. These acts were not reasonably sufficient to incite the use of deadly force.
 {¶ 135} Because the evidence does not reasonably support an acquittal on the murder charge, an instruction on involuntary manslaughter was not required. See State v. Carter (2000), 89 Ohio St.3d 593, 600,734 N.E.2d 345.
 {¶ 136} Appellant's Sixth Assignment of Error is overruled.
 VIII. IX. {¶ 137} In his Eighth Assignment of Error appellant maintains that the trial court erred by not suppressing the statements he made to the Mansfield Police Department. In his Ninth Assignment of Error, appellant submits that the trial court committed plain error by not suppressing his statement to the Columbus police department. We shall consider the two assignments of error together.
 {¶ 138} On May 9, 2003, the trial court filed a Judgment Entry overruling appellant's Motion to Suppress his statements to the Mansfield Police Department. The trial court found that the appellant was "in custody" however; his statement was made after a knowing, intelligent and voluntary waiver of his constitutional rights.
 {¶ 139} A statement made by an accused in the course of a custodial interrogation is admissible at trial only upon proof that the accused was advised of his constitutional rights and that the accused voluntarily, knowingly, and intelligently waived those rights. State v. Dailey
(1990), 53 Ohio St.3d 88, 91, 559 N.E.2d 459, citing Miranda v. Arizona
(1966) 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694. See, also,State v. Hamilton, Clermont App. No. CA2001-04-044, 2002-Ohio-560.
 {¶ 140} A suspect's decision to waive his Fifth Amendment privilege is made voluntarily absent evidence that his will was overborne and his capacity for selfdetermination was critically impaired because of coercive police conduct. Colorado v. Spring, supra, 479 U.S. at 574,107 S.Ct. at 857. See, also, State v. Black (1976), 48 Ohio St.2d 262, 2 O.O.3d 422, 358 N.E.2d 551, paragraph four of the syllabus, vacated in part (1978), 438 U.S. 910, 98 S.Ct. 3134, 57 L.Ed.2d 1154. Thus, coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which Miranda was based.Colorado v. Connelly (1986), 479 U.S. 157, 170, 107 S.Ct. 515, 523-24,93 L.Ed.2d 473.
 {¶ 141} The evidence supports the trial court's findings that appellant was properly advised of his Miranda rights and that he understood those rights when he signed the waiver. An accused's signed waiver form is strong proof that the waiver was valid. Id. at 261, 527 N.E.2d at 854; North Carolina v. Butler (1979), 441 U.S. 369, 374-375,99 S.Ct. 1755, 1758-1759, 60 L.Ed.2d 286, 293.
 {¶ 142} In determining a confession's voluntariness, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. * * *" State v. Barker (1978), 53 Ohio St.2d 135, 372 N.E.2d 1324, paragraph two of the syllabus.
 {¶ 143} Police questioned appellant for approximately 32 minutes. Thus the questioning was neither prolonged nor intense. Appellant, who is twenty-two years old has an eleventh grade education. Appellant further has admitted prior incarcerations for drug abuse, receiving stolen property and forgery, among others. These facts, including his familiarity with the criminal justice system, all support voluntariness. State v.Smith (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515. Finally, the interview on tape supports the belief that his statement was voluntary. Compare State v. Broom (1988), 40 Ohio St.3d 277, 285, 533 N.E.2d 682,692-693, with State v. Brewer (1990), 48 Ohio St.3d 50, 57-58,549 N.E.2d 491, 499-500. State v. Smith, supra.
 {¶ 144} Accordingly, appellant's Eighth Assignment of Error is overruled.
 {¶ 145} Concerning appellant's statements to the Columbus Police Department, we note that on April 29, 2003, appellant's trial counsel filed a "Second Motion to Suppress" concerning these statements. However, on June 6, 2003, appellant's trial counsel withdrew the motion to suppress concerning the appellant's statements to the Columbus Police Department.
 {¶ 146} "Filing a motion to suppress is not without risks, and the fact that counsel filed a motion for leave to file the motion to suppress, and later withdrew that motion, is compelling evidence of a tactical decision. It is not mere speculation to presume that defense counsel obtained information concerning the suppression motion that led to its withdrawal." State v. Madrigal (2000), 87 Ohio St.3d 378, 389,2000-Ohio-448, 721 N.E.2d 52, 64.
 {¶ 147} In his assignment of error, appellant recognizes that he did not raise this issue in the trial court. Thus, appellant asserts that the trial court committed plain error by allowing the prosecution to present evidence of appellant's statements. Accordingly, our analysis of this assignment of error is in accordance with the plain error standard as set forth in Assignment of Error II, supra.
 {¶ 148} Miranda does not apply unless there is a custodial interrogation. State v. Wiles (1991), 59 Ohio St.3d 71, 83, 571 N.E.2d 97,114. In State v. Barnes (1986), 25 Ohio St.3d 203, 495 N.E.2d 922, the Ohio Supreme Court found that no custodial interrogation took place when an uncharged suspect came to the police station at a detective's request and then answered questions while there.
 {¶ 149} In the case sub judice, the record reflects that appellant had not been charged at the time of the conversation. Appellant voluntarily contacted the Columbus Police Department because he had worked as a confidential informant for that department in the past. Appellant volunteered over the telephone that he shot someone at a party the previous night. The statements made while en route to the police department were volunteered by appellant and were not in response to any police questioning or interrogation.
 {¶ 150} "[T]he special procedural safeguards outlined in Miranda are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation. `Interrogation,' as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself."Rhode Island v. Innis (1980), 446 U.S. 291, 300, 100 S.Ct. 1682, 1689. See, also, State v. Phillips (1991), 75 Ohio App.3d 785, 788.
 {¶ 151} In addition, we find the statements made to the Columbus Police Department were cumulative to appellant's taped statement to the Mansfield Police Department.
 {¶ 152} Accordingly, we find that appellant's substantial rights were not affected by the trial court's failure to sua sponte exclude his statements to the Columbus Police Department. We find no manifest miscarriage of justice so as to warrant the granting of a new trial.
 {¶ 153} Appellant's Ninth Assignment of Error is overruled.
 X. {¶ 154} In his Tenth Assignment of Error, appellant maintains that the trial court erred in giving instructions to the jury and failing to give the jury a verdict form specifying whether appellant was guilty or not guilty of murder under R.C. 2903.02(A) or R.C. 2903.02 (B). We disagree.
 {¶ 155} In Count One, appellant was charged with murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *." In Count 2, he was charged with murder in violation of R.C. 2903.02(B), which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."
 {¶ 156} Appellant essentially argues that his right to a unanimous verdict includes a right to a unanimous theory of culpable conduct supporting that verdict.
 {¶ 157} "The United States Supreme Court rejected a similar argument in Schad v. Arizona (1991), 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555. In Schad, the defendant was convicted of first-degree murder after the prosecution advanced theories of premeditated murder and felony murder. The jury was not instructed to unanimously find defendant guilty based on one of the proposed theories of guilt. The Schad court found that different mental states of moral and practical equivalence (premeditated and felony murder) may serve as alternative means to satisfy the mens rea element for the single offense of murder, without infringing upon the constitutional rights of the defendant. Id. at 643, 111 S.Ct. 2491,115 L.Ed.2d 555.
 {¶ 158} "The Schad court noted: "We have never suggested that in returning general verdicts in [cases proposing multiple theories] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, `different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" Id. at 631-632, 111 S.Ct. 2491, 115 L.Ed.2d 555, quoting McKoy v. N. Carolina
(1990), 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (Blackmun, J., concurring)." State v. Skates (2004), 104 Ohio St.3d 195, 205-206,2004-Ohio-6391 at ¶ 53-54, 819 N.E.2d 215, 237.
 {¶ 159} Therefore, we hold that because all the jurors in Appellant's case agreed on the verdict, they were not required to unanimously agree upon any one purpose for the murder of Robert Clark. The trial court did not commit plain error in failing to give such an instruction, or provide separate verdict forms. See State v. Bell (1996), 112 Ohio App.3d 473,482-483, 679 N.E.2d 44; see, also, State v. Evans (Aug. 18, 1993), Hamilton App. Nos. C-910443 and C-910515, 1993 WL 311681.
 {¶ 160} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed.
Gwin, J., and Boggins, P.J., concur Edwards, J., concurs separately.