JOURNAL ENTRY AND OPINION
{¶ 1} Defendant Patrick Duncan (appellant) appeals his murder and robbery convictions. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} On April 27, 2005, appellant and co-defendant David Johnson (Johnson) robbed Jeffrey Isaacs at gunpoint on Terrance Road in East Cleveland, taking Isaacs' paycheck and wallet. Appellant and Johnson then recruited Frederick Futrell (Futrell) to cash the $830.11 paycheck in exchange for $100. Futrell cashed the check and as appellant drove the three men away from the scene, Futrell said he wanted to keep more than the agreed upon $100. An argument ensued, and appellant pulled the car over on a side street and pulled out a .38 caliber pistol. According to appellant, he only intended to scare Futrell; however, during the course of the argument, he and Futrell struggled for control of the firearm and the gun accidentally went off. Appellant and Johnson took the cash from Futrell and left the scene. Futrell died later that evening from a gunshot wound to the chest.
 {¶ 3} On May 12, 2005, appellant was charged with one count of aggravated murder in violation of R.C. 2903.01(A), one count of felony murder in violation of R.C. 2903.02(B), and two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), all with three-year firearm specifications in violation of R.C.2941.145. On September 30, 2005, a jury found appellant guilty of one count of reckless homicide in violation of R.C. 2903.041, as a lesser included offense of aggravated murder, and guilty of the other three counts as indicted, including the firearm specifications. The court sentenced appellant to five years in prison for the reckless homicide, five years in prison for each robbery, and 15 years-to-life in prison for the felony murder, all to run concurrently. Appellant was also sentenced to three years for the firearm specifications, for an aggregate sentence of 18 years-to-life in prison.
 II. {¶ 4} In his first assignment of error, appellant argues that "the trial court erred by its failure to give jury instructions as to lesser included offenses." Specifically, appellant argues that the court should have instructed the jury on involuntary manslaughter as a lesser included offense of felony murder, as he claims the murder was accidental and committed during the commission of a misdemeanor, rather than a felony. The defense requested the involuntary manslaughter instruction based on the underlying offense being aggravated menacing or unlawful discharge of a weapon; the court refused to instruct the jury on this theory.
 {¶ 5} A criminal defendant is entitled to a jury instruction on a lesser included offense "only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."State v. Thomas (1988), 40 Ohio St.3d 213, 216. Involuntary manslaughter under R.C. 2903.04 is a lesser included offense of felony murder under R.C. 2903.02(B). State v. Lynch,98 Ohio St.3d 514, 526, 2003-Ohio-397. Felony murder occurs when an offender causes "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(B). Involuntary manslaughter, on the other hand, results from "the offender's committing or attempting to commit a felony * * * [or] a misdemeanor * * *." R.C. 2903.04(A), (B). In other words, for an involuntary manslaughter charge to be appropriate in the instant case, there must have been reasonable evidence presented that the underlying crime was a misdemeanor. Appellant does not argue that the underlying crime in the instant case was a felony other than an offense of violence.
 {¶ 6} At trial, the state argued that the underlying crime was aggravated robbery in violation of R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense, * * * shall * * * [h]ave a deadly weapon * * *." Aggravated robbery is an offense of violence and a first-degree felony. However, appellant argued that a jury could reasonably believe his actions constituted aggravated menacing or unlawful discharge of a firearm. Pursuant to R.C. 2903.21, the elements of aggravated menacing are "knowingly cause another to believe that the offender will cause serious physical harm to the person * * *." Pursuant to City of East Cleveland Ordinance 549.08(A), "[n]o person shall discharge any air gun, rifle, shotgun, revolver, pistol or other firearm within the corporate limits of the municipality." Both aggravated menacing and unlawful discharge of a firearm are misdemeanors.
 {¶ 7} In the instant case, the state presented the following evidence: a police officer testified that Futrell stated he had been shot and robbed; no cash was found on Futrell when the police arrived at the scene; Futrell died as a result of internal bleeding caused by a gunshot wound; a trace evidence expert from the coroner's office testified that test results were consistent with Futrell's hand not touching appellant's gun and a muzzle-to-target distance of at least four feet.
 {¶ 8} Appellant's version of the events was based on his written confession to the East Cleveland police given May 6, 2005, in which he stated the following:
"At that point we knew he did not give us all the money and webegan arguing about the rest of the money. [Futrell] was sayingthat we cannot take all the money and we had told him what wewere going to give him. * * * We were still arguing with[Futrell] over the money, but he did not want to give the rest ofit to us. [Johnson] kept asking for the money and so was I, Ireached in the back of the car with my gun a .38 caliber specialchrome automatic pistol. I was trying to scare him, [Futrell]started fighting with me over the gun and it went off. I was inshock and thought I was shot, I did not see where the bullet wentand I do not know if anybody was shot."
 {¶ 9} Appellant additionally claims to have ended up with $400 of the approximately $800 that Futrell received after cashing the stolen paycheck.
 {¶ 10} No matter which version of events a jury chose to believe, it is apparent from the record that appellant had a deadly weapon while he was committing or attempting to commit a theft offense. This set of facts falls squarely under the offense of aggravated robbery, which is a first-degree felony and an offense of violence. Therefore, the resulting death cannot be an "accident" amounting to involuntary manslaughter, and the court did not err in refusing to instruct the jury as such. See, Statev. Miller, 96 Ohio St.3d 384, 390, 2002-Ohio-4931 (holding that the mens rea required for felony murder is that the defendant knowingly committed the underlying felony and if the victim dies as a result of that felony, it makes an offender "guilty of felony murder, regardless of his purpose").
 {¶ 11} Accordingly, appellant's first assignment of error is overruled.
 III. {¶ 12} In his second assignment of error, appellant argues that "a police officer's testimony informing the jury of the substance of the statements that a non-testifying decedent related to him about the defendant's activities is violative of the defendant's state and federal right to confrontation." Specifically, appellant argues that statements Futrell made to a police officer indicating that he was robbed before being shot are inadmissible hearsay as contemplated by Crawford v.Washington (2004), 541 U.S. 36.
 {¶ 13} The Sixth Amendment's Confrontation Clause affords criminal defendants "the right * * * to be confronted with the witnesses against him." This right applies to both state and federal proceedings. Pointer v. Texas (1965), 380 U.S. 400,406.
 {¶ 14} The United States Supreme Court recently revised this area of law in Crawford, supra. The first determination to be made regarding whether an out-of-court statement violates a criminal defendant's Sixth Amendment right to confrontation is whether the statement is testimonial in nature. Crawford,541 U.S. at 53. Traditionally, testimonial statements included, inter alia, statements given under oath in a formal proceeding. TheCrawford court expanded this category to include statements made while under interrogation by law enforcement officers. Id. "Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Id. at 59. See, also, State v. Allen, Cuyahoga App. No. 82556,2004-Ohio-3111. On the other hand, nontestimonial statements are still governed by the applicable evidence rules on hearsay. See,Ohio v. Roberts (1980), 448 U.S. 56, 66 (holding that in general, nontestimonial out-of-court statements by unavailable witnesses may be admitted if they have adequate "indicia of reliability").
 {¶ 15} Appellant's argument is as follows: Futrell spoke with the knowledge that his statements would be used in a court proceeding and the statements were made while under police interrogation; therefore, the statements are testimonial in nature. Furthermore, Futrell was unavailable to testify and there was no opportunity for cross-examination. As a result, bringing Futrell's statement into court via the police officer's testimony violates the Confrontation Clause.
 {¶ 16} The state, on the other hand, argues that Crawford
does not apply to the instant case because the victim's statements were not testimonial in nature, in that they were his final words before dying, and were made under stress rather than a concern for future prosecution. The state argues that Futrell's statements fall under the long-standing excited utterance and dying declaration exceptions to the evidentiary rule against hearsay, and are not disturbed by Crawford.
 {¶ 17} Evid.R. 804(B)(2) defines dying declaration, or a statement under belief of impending death, as "a statement made by a declarant, while believing that his or her death was imminent, concerning the cause or circumstances of what the declarant believed to be his or her impending death."
 {¶ 18} In the instant case, the first police officer to arrive at the scene had a brief conversation with Futrell. The testimony regarding what Futrell said follows:
"Q: Did you question him as to what happened to him?
 A: Yeah. When I first got there he was saying he was hard ofbreathing and so forth. I told him, "Lie down. Relax." EMS wascoming. Asked him, you know, general question, what happened. Andhe said, "They shot me." * * * I asked him, you know, "Do youknow who shot you?" And —
 Q: Officer Taddesse, when you originally spoke with Mr.Futrell, you said he was having difficulty breathing?
 A: Yes, he was.
 {¶ 19} Q: He seemed distracted?
 A: Very.
 Q: Worried?
 A: Yes.
 Q: Worried for his health and whether he might make it ornot?
 A: He seemed very upset. You know, he had obviously been thevictim of a violent offense, been shot. He was sweating, he wasrolling and in the dirt, and he was explaining he was havingdifficulty breathing.
 Q: And did he indicate to you who did this to him?
* * *
A: His words were, `The niggers on Taylor.'
 Q: Was he able to name any names?
 A: No. I asked him you know, `Do you know who they are?' Andhe shook his head yes. And I asked him if he knew what theirnames were. He said no. So I gathered from that he may have beenfamiliar with the parties.
 Q: Did he indicate why they did this?
 A: Yeah, I asked him why, or if he knew why. He said, `Theyrobbed me.'"
 {¶ 20} Futrell made this statement sometime around 11:00 p.m. By 11:29 p.m. he was pronounced dead.
 {¶ 21} Whether a dying declaration can co-exist with the principles outlined in Crawford is a case of first impression in this court. For guidance, we turn to the United States Sixth Circuit Court of Appeals' decision in U.S. v. Cromer (C.A. 6, 2004), 389 F.3d 662, which defined testimonial evidence in light of Crawford. A statement is testimonial in nature if "the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statements being used against the accused in investigating and prosecuting the crime." Id. at 675.
 {¶ 22} We note that the Crawford court stated in dictum that "we need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is suigeneris." Crawford, 541 U.S. at 56, fn. 6. See, also, Statev. Nix, Hamilton App. No. 030696, 2004-Ohio-5502 (holding that a dying declaration is not testimonial hearsay and its admission does not create an error under Crawford).
 {¶ 23} We agree with the reasoning in Nix and hold that a dying declaration does not implicate Crawford and remains an exception to the rule against hearsay.
"The rationale for the exception is that such statements areinherently reliable because the declarant, believing he or she isabout to die, will be motivated to tell the truth for fear ofpunishment in the hereafter. Such statements are admitted, also,out of simple necessity, since a homicide victim is often theonly witness to his murder or the only person to understand itscircumstance."
 Nix, supra, at ¶ 72 (internal citations omitted).
 {¶ 24} Furthermore, we hold that in the instant case, Futrell made the statements in question while believing his death was imminent, and the nature of the statements concerns the circumstances of his death. Although the statements were made to a police officer, the facts of this case do not lead us to believe that the colloquy was an interrogation, nor do we believe that Futrell made the statements in anticipation of a criminal prosecution.
 {¶ 25} Given this, allowing the officer's testimony regarding Futrell's dying declaration did not violate appellant's right to confrontation as sculpted by Crawford. We offer no opinion on the state's argument concerning the relationship between excited utterances and Crawford. Appellant's second assignment of error is overruled.
 IV. {¶ 26} In his third assignment of error, appellant argues that "the trial court erred when it failed to dismiss count two of the indictment as it was facially and
 {¶ 27} substantively deficient." Specifically, appellant argues that the state failed to identify in the indictment the offense of violence that served as the underlying crime for the felony murder charge.
 {¶ 28} We have repeatedly held that in an indictment for felony murder or involuntary manslaughter, both of which predicate themselves on an underlying offense, specification of the underlying felony or misdemeanor is not required. See, Statev. Jones, Cuyahoga App. No. 80737, 2002-Ohio-6045; State v.Hunter, Cuyahoga App. No. 86048, 2006-Ohio-20. See, also, R.C.2941.14(A), which states that in "an indictment for aggravated murder, murder, or voluntary or involuntary manslaughter, the manner in which, or the means by which the death was caused need not be set forth."
 {¶ 29} Appellant's third assignment of error is overruled.
 V. {¶ 30} In his final two assignments of error, appellant argues that "the trial court erred when it failed to merge the reckless homicide and felony murder convictions prior to sentencing," and "the appellant was denied effective assistance of counsel when counsel failed to request that the trial court merge the two convictions of reckless homicide and murder where only one death occurred."
 {¶ 31} The state concedes that the reckless homicide and murder convictions should be merged for sentencing purposes. See,State v. Moore (1998), 81 Ohio St.3d 22, 39 (holding that "[t]wo aggravated murder charges involving the same victim are to be merged for sentencing purposes"). However, the Moore court goes on to say that while the lower court may have erred in sentencing on both murder counts, "[s]uch an error is procedural and harmless beyond a reasonable doubt."
 {¶ 32} In Moore, the defendant was sentenced to death on both murder counts. In the instant case, appellant was sentenced to five years on the reckless homicide count and 15 years on the felony murder count, to run concurrently. Because the terms are to run concurrently, the aggregate sentence of 15 years for murder is the same whether or not the convictions are merged, thus rendering the error harmless. As in Moore, a merger of the sentences at the appellate level will cure any error.
 {¶ 33} Accordingly, we sustain appellant's fourth assignment of error for the limited purpose of merging the two murder sentences into one 15-year sentence, to be served consecutively to the three-year sentence for the firearm specification. This renders appellant's fifth assignment of error regarding ineffective assistance of counsel moot.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Corrigan, J., concur.