{¶ 1} Defendant-appellant, Romaro Kincaid ("defendant"), appeals from the judgment entered following a bench trial finding him guilty of two counts of murder and two counts of aggravated robbery. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On July 7, 2005, the Cuyahoga County Grand Jury indicted defendant in a six-count indictment on two counts of aggravated murder with firearm and capital specifications, in violation of R.C. 2903.01
and four counts of aggravated robbery with firearm specifications, in violation of R.C. 2911.01. Defendant was indicted along with three other co-defendants, Andrew Nix ("Nix"), Robert Cochran ("Cochran"), and Alkeya Isler ("Isler").
 {¶ 3} These charges arose out of a fatal shooting that occurred on the evening of June 25, 2005. On that evening, Michael Beaufort ("Beaufort") was robbed at gunpoint by three men while seated in the front seat of his car in the parking lot of the Westropp Manor apartment building. During the robbery, Raymond Maxwell ("Maxwell"), who was seated in the back seat, was shot in the chest and died as a result of his injuries. Shortly after the incident, members of the Cleveland Police Department apprehended defendant as well as the other co-defendants.
 {¶ 4} Defendant waived his right to a jury and the matter proceeded to a three-judge panel bench trial on April 27, 2006. The State first called Beaufort, who testified that he and Maxwell had been friends for over 19 years. He testified that on the afternoon of June 25, 2005, he and Maxwell were driving around town and Beaufort was selling drugs. Beaufort received a phone call from a woman named "Tina," later identified as co-defendant Isler, who wanted to get together with him that night. Beaufort and Maxwell picked up "Tina" at the Harborview apartment complex.
 {¶ 5} Beaufort, Maxwell, and "Tina" drove around for awhile. At some point, "Tina" asked Beaufort if she could use his cell phone so that she could call a girlfriend for Maxwell. "Tina" made arrangements to meet her friend at the Westropp Manor apartment building. Beaufort, Maxwell, and Tina arrived at the Westropp Manor and Tina said she was going inside to get a drink. Beaufort and Maxwell remained in the car. However, Maxwell got into the back seat of the car so that when "Tina" came out with her friend, he could sit next to her in the back seat.
 {¶ 6} Shortly after Maxwell got into the back seat of the car, three men appeared at the car; co-defendant Nix was positioned near the back fender of the car, and Cochran and defendant at the driver's side car window. Beaufort recognized Cochran and the defendant, who he knew as "Buddy Row." Defendant was wearing a red bandana over his face and was holding a gun. Defendant held the gun to Beaufort's face, went through his pockets and took about $300 in cash. Meanwhile, Maxwell, who was still seated in the back seat, opened the back door. Beaufort saw the interior car light go on when the door opened. Defendant fired his gun into the back seat and shot Maxwell in the chest, penetrating both lungs.
 {¶ 7} Immediately after the shooting, Nix, Cochran, and defendant took off running. Maxwell, though injured, was able to run away. Beaufort initially ran away, but then went back to his car to look for Maxwell. Beaufort found Maxwell not far from the parking lot. Maxwell was bleeding and appeared to be in shock. Beaufort began crying and screaming for help. The Cleveland Police arrived on the scene shortly thereafter, called for an ambulance, and began to search for the assailants. The Cleveland Police apprehended the defendants within 15 minutes of the shooting. While still at the scene, Beaufort was able to positively identify defendant as the shooter.
 {¶ 8} Next, co-defendant Nix testified that he and Cochran met up at around 10:00 p.m. on the night of June 25, 2005 to sell drugs. They met up with defendant, a friend of Cochran's. Nix did not know defendant prior to this evening. The three drove to the Westropp Manor apartment complex and Cochran told Nix that they were going to rob someone. The three got out of the car and Cochran put a white towel over the lower part of his face and defendant put a red scarf over his face. Nix saw defendant take out a gun. Nix positioned himself as the "lookout" at the rear of the car. He saw defendant put a gun to the driver's head and then heard the gun go off. He saw a man, later identified as Maxwell, get out of the back seat and start running. Nix also took off running towards Cochran's house. Cochran and defendant met Nix at Cochran's house within minutes. Cochran's girlfriend, "Tina," arrived at Cochran's house a few seconds later. Approximately five minutes later, the Cleveland Police arrived and everyone ran. The police found Nix and Cochran about 15 minutes later hiding under a porch and took them to the scene. Nix identified defendant as the shooter. Nix then went to the police station and made a statement.[1]
 {¶ 9} The State's next witness was co-defendant Isler. She testified that she was Cochran's girlfriend at the time of the shooting and that she made arrangements to meet Beaufort on the night of June 25, 2005 so that Cochran could rob him. Isler testified that she had met Beaufort several months earlier at Cochran's request to "scope him out" and Beaufort knew her as "Tina." On the afternoon of June 25, 2005, Isler telephoned Beaufort as "Tina" and asked to meet up with him. Beaufort and Maxwell picked Isler up at the Harborview apartments and the three of them drove them to the Westropp Manor apartments. She testified that she got out of the car, walked to the front of the building where Cochran, Nix, and defendant were waiting, and told them that Beaufort was waiting in the car behind the building. Isler testified that the three men went to the back of the building and that minutes later she saw the three men running to Cochran's house. The police arrived shortly thereafter and all three men fled.
 {¶ 10} Next, several officers of the Cleveland Police Department testified. Detective Gerald Crayton testified that he responded to the scene and that Nix made an oral statement to him and identified defendant as the shooter. Next, Detective Rodney McClendon testified that he spoke with defendant at the scene and defendant said he had been cooking crack at his house. Next, Sergeant Nathan Willson testified about the bullet that killed Maxwell. Detective Frank Costanzo testified that he performed gunshot residue swab tests on the defendants. Officer Michael Legg testified that he responded to Cochran's house after the shooting and saw Nix and Cochran run away. He also ordered defendant to get out of his car and lay on the ground. Officer Robert Taylor testified that he apprehended Nix and Cochran after they were found hiding under a porch. Sergeant Brian Miller testified that Beaufort positively identified defendant in a cold-stand as the shooter at the scene shortly after the shooting. Vice Squad Detective Stephanie Murphy testified that she spoke with Beaufort at the scene of the crime and relayed his descriptions of the suspects to the other officers. Homicide Detective Joselito Sandoval testified that Nix positively identified defendant in a cold-stand as the shooter at the scene shortly after the shooting.
 {¶ 11} County Coroner Dr. Elizabeth K. Balraj, M.D., testified that Maxwell died as a result of a perforating gunshot wound to the chest. The bullet penetrated both of Maxwell's lungs and exited from the lower back area. Maxwell would have been able to run away after this injury, although it was ultimately the cause of his death.
 {¶ 12} For the defense, Hazel Davis testified that she lives in the Westropp Manor apartments and saw Beaufort in his car. She asked Beaufort what he was doing and he told her that he was waiting for someone. Several seconds later, she heard a gunshot and someone saying that someone got shot. Next, attorney Ian Friedman testified that he was initially hired to defend the defendant. He met with Nix and Cochran and testified that Nix indicated to him that defendant's firing of the gun could have been an accident. Finally, Juanita Kincaid Allen, defendant's mother, testified that she knew that defendant and Maxwell knew each other. She testified that she spoke with defendant on the night of the shooting and that he appeared normal.
 {¶ 13} At the conclusion of all testimony, the trial court advised the parties that it would consider the lesser-included offense of murder with regard to counts one and two. The trial court denied defendant's request to also consider involuntary manslaughter.
 {¶ 14} On May 8, 2006, defendant was found guilty of two counts of the lesser-included offense of murder of Maxwell with three-year firearm specifications and guilty of two counts of aggravated robbery of Beaufort with three-year firearm specifications. Defendant was found not guilty of aggravated robbery of Maxwell. On June 8, 2006, defendant was sentenced to consecutive terms in prison for a total sentence of life in prison with the possibility of parole after 22 years. Defendant now appeals and raises the following five assignments of error for our review, which will be addressed together where appropriate.
 {¶ 15} "I. The State failed to present sufficient evidence to sustain a conviction against appellant.
 {¶ 16} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 17} In these two assignments of error, defendant argues that the State failed to present sufficient evidence to support his convictions for murder and that his convictions for murder are against the manifest weight of the evidence because there is no evidence that he intended to or purposely killed Maxwell. Specifically, defendant claims that he only intended to rob Beaufort and that he "accidently" shot Maxwell.
 {¶ 18} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. State v. Thompkins (1997) 78 Ohio St.3d 380, 387. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 19} In contrast, when reviewing a judgment under a manifest weight standard of review "the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." Thompkins, supra, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 20} Here, defendant was convicted of two counts of murder in violation of R.C. 2903.02(A) and (B). R.C. 2903.02(A) provides that "no person shall purposely cause the death of another." To find the defendant guilty of murder under R.C. 2903.02(A), the fact finder would have to find that the defendant purposely caused the death of Maxwell.
 {¶ 21} A person acts "purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).
 {¶ 22} Intent to kill "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." State v. Eley, 77 Ohio St.3d 174, 180,1996-Ohio-323.
 {¶ 23} "Intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death." State v. Mackey (1999), Cuyahoga App. No. 75300; State v. Collins, Richland App. No. 2003-CA-0073, 2005-Ohio-1642. Specifically, the act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence. State v. Collins, supra; State v. Turner (1997), Franklin App. No. 97APA05-709; State v. Brown (1996), Cuyahoga App. No. 68761; see, also, State v. Smith (1993), 89 Ohio App.3d 497, 501
(finding that pointing a gun at a group of people less than 20 feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill).
 {¶ 24} Here, the evidence at trial showed that defendant aimed his gun into the back seat and fired the gun as Maxwell was attempting to flee the vehicle. This act is a strong indication that defendant intended to shoot Maxwell. Indeed, given the close range, a trier of fact could construe the intention to shoot as proof of an intention to kill. This was a purposeful action that cannot be deemed to fall to the level of "accidental."
 {¶ 25} Defendant was also convicted of murder in violation of R.C. 2903.02(B), which provides that "no person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2911.01(A)(1) defines aggravated robbery as "no person, in attempting or committing a theft offense * * * shall * * * have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 26} Here, the defendant was convicted of committing aggravated robbery against Beaufort.[2] Defendant robbed Beaufort at gunpoint while Maxwell sat in the back seat. When Maxwell tried to flee the car, defendant turned the gun onto Maxwell and shot him. Clearly, the death of Maxwell was the proximate result of defendant committing aggravated robbery. But for the aggravated robbery of Beaufort, Maxwell would not have been shot.
 {¶ 27} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that defendant had committed the crimes of murder as defined in R.C. 2903.02(A) and (B). Accordingly, the State met its burden of production regarding each element of the crime of murder and there was sufficient evidence to support defendant's convictions.
 {¶ 28} Although defendant presented testimony from attorney Friedman that he did not intend to shoot anyone, and that it was an accident, the three-judge panel, as trier of fact, was free to accept or reject any and all of the evidence offered by the defendant and assess the witness's credibility.
 {¶ 29} We conclude that the three-judge panel, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of the crimes of murder.
 {¶ 30} Accordingly, defendant's convictions for murder are not against the manifest weight or the sufficiency of the evidence.
 {¶ 31} Assignments of Error I and II are overruled.
 {¶ 32} "III. The trial court erred by refusing to consider the lesser included offense of involuntary manslaughter."
 {¶ 33} In the third assignment of error, defendant argues that the trial court should have considered involuntary manslaughter as a lesser included offense, since he claims the murder was accidental.
 {¶ 34} The trial court must consider a lesser included offense only when the evidence would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense. State v.Thomas (1988), 40 Ohio St.3d 213. Involuntary manslaughter under R.C. 2903.04 is a lesser included offense of felony murder under R.C. 2903.02(B). State v. Lynch, 98 Ohio St.3d 514, 526, 2003-Ohio-397. Felony murder occurs when an offender causes "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." See R.C. 2903.02(B). Involuntary manslaughter, on the other hand, results from "the offender's committing or attempting to commit a felony * * * [or] a misdemeanor." See R.C. 2903.04(A)(B). Thus, in order for an involuntary manslaughter charge to be appropriate, there must be reasonable evidence that the underlying crime was a misdemeanor. SeeState v. Duncan, Cuyahoga App. No. 87220, 2006-Ohio-5009.
 {¶ 35} In this case, the underlying crime was aggravated robbery in violation of R.C. 2911.01(A)(1). R.C. 2911.01(A)(1) defines the crime of aggravated robbery and states that "no person, in attempting or committing a theft offense, * * * shall * * * have a deadly weapon." At trial, the evidence clearly demonstrated that defendant used a deadly weapon while committing a theft offense. This set of facts falls squarely under the offense of aggravated robbery, which is a first-degree felony and on offense of violence. See State v.Duncan, supra. Accordingly, the trial court properly held that the appropriate lesser included offense to consider was felony murder under R.C. 2903.02(B) and not involuntary manslaughter.
 {¶ 36} In addition, the difference between the crimes of murder and involuntary manslaughter is the element of intent. Murder is defined as the "purposeful" killing of another, while involuntary manslaughter defines intent as "recklessly." Here, the trial court found sufficient evidence that defendant purposefully caused Maxwell's death. Defendant aimed the gun into the back seat and fired the gun as Maxwell was attempting to flee the car. This is a purposeful action that cannot be deemed to fall to the level of mere recklessness or accident. Thus, the evidence at trial did not support both an acquittal on the murder charge and a conviction on an involuntary manslaughter charge. We find no abuse in the court's decision to not consider the lesser included offense of involuntary manslaughter.
 {¶ 37} The third assignment of error is overruled.
 {¶ 38} "IV. The trial court erred by ordering convictions for separate counts of murder and aggravated robbery to be served consecutively because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14."
 {¶ 39} In his fourth assignment of error, defendant argues that the trial court erred when it failed to merge his convictions because the offenses are allied offenses of similar import. Specifically, defendant argues that his multiple convictions arose from the same incident.
 {¶ 40} A trial court is authorized to convict and to sentence a defendant for two or more offenses, arising out of the same criminal conduct or transaction, provided the offenses: (1 ) were not allied and of similar import, (2) were committed separately or (3) were committed with a separate animus as to each offense. State v. Moss (1982),69 Ohio St.2d 515, 519.
 {¶ 41} This Court has previously held that felony murder, under R.C. 2903.02(B), is not an allied offense with aggravated robbery, under R.C. 2911.01(A)(1), because felony murder can be committed without the commission of an aggravated robbery, and aggravated robbery can be committed without the commission of a murder. See State v.Marshall, Cuyahoga App. No. 87334, 2006-Ohio-6271. See, also, State v.Dougherty (September 12, 1996), Hancock App. No. 5-94-2 (felony murder requires proof of the death of another while committing or attempting to commit any of nine listed felonies. Aggravated robbery, on the other hand, requires no proof of death, but only the possession of a weapon or physical harm caused during the commission of a theft offense.)
 {¶ 42} Moreover, where a defendant commits a single act and is charged with two offenses each, which concern a different victim, the offenses are offenses of dissimilar import. State v. Collins, Richland App. No. 2003-CA-0073, 2005-Ohio-1642; State v. Phillips (1991),75 Ohio App.3d 785, 790-791.
 {¶ 43} Accordingly, defendant was properly convicted and sentenced for both the murder of Maxwell and the aggravated robbery of Beaufort.
 {¶ 44} The fourth assignment of error is overruled.
 {¶ 45} "V. The trial court erred by ordering appellant to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record."
 {¶ 46} In his fifth assignment of error, defendant challenges the trial court's imposition of consecutive sentences and argues that the trial court did not make appropriate findings to justify a consecutive sentence.
 {¶ 47} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court found certain provisions of Ohio's sentencing statute unconstitutional, in light of Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, because said provisions required judicial fact finding to exceed the sentence allowed simply as a result of a conviction or plea. The court therein concluded "* * * that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at 100.
 {¶ 48} While courts are no longer duty-bound to make statutory findings, trial courts are still required to consider the general guidance factors contained in R.C. 2929.11 and R.C. 2929.12 in their sentencing decisions. See State v. Duff, Licking App. No. 06CA81,2007-Ohio-1294; State v. Diaz, Lorain App. No. 05CA008795,2006-Ohio-3282. Accordingly, while judicial fact-finding is no longer required before a court imposes consecutive or maximum prison terms, such findings can be a useful aid for an appellate court in ascertaining and understanding the trial court's rationale behind its imposition of a certain sentence. See State v. Green, Cuyahoga App. No. 88096,2007-Ohio-1291.
 {¶ 49} Here, our review of the resentencing hearing shows that the trial court did consider the general guidance and statutory factors when imposing consecutive sentences.
 {¶ 50} The fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, PRESIDING JUDGE
SEAN C. GALLAGHER, J., and MARY EILEEN KILBANE, J., CONCUR
[1] Nix entered into a plea agreement and received five years in prison in exchange for testifying against defendant.
[2] Indeed, defendant did not even appeal his conviction for aggravated robbery.